**No. 26-1055**

# In The
# United States Court of Appeals
## For The Fourth Circuit

GRACE OCEAN PRIVATE LIMITED, as Owner of the M/V DALI, and
SYNERGY MARINE PTE LTD, as Manager of the M/V DALI

*Petitioners-Appellees*

v.

UNITED SOURCE ONE, INC.

*Claimant-Appellant*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND AT BALTIMORE

———————————————

**BRIEF OF PETITIONERS-APPELLEES**

———————————————

Robert B. Hopkins
Laurie G. Furshman
Tristan A. Dietrick
DUANE MORRIS LLP
1201 Wills Street, Suite 330
Baltimore, MD 21231
(410) 949-2900

William R. Bennett III
BLANK ROME LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 885-5000

*Counsel for Petitioners-Appellees*

# **TABLE OF CONTENTS**

**Page**

COUNTER-STATEMENT OF ISSUES PRESENTED FOR REVIEW..................1

COUNTER-STATEMENT OF THE CASE ..........................................................1

STANDARD OF REVIEW ................................................................................4

SUMMARY OF ARGUMENT ..........................................................................4

ARGUMENT ....................................................................................................5

I.      The District Court Applied the Correct Legal Standards in Evaluating US1's Motion Seeking Permission to File a Late Claim................................5

II.     The District Court Did Not Abuse Its Discretion in Denying US1's Motion Seeking Leave to File an Extremely Tardy Claim. ...........................8

III.    US1's Late Claim Is Independently Time Barred by the Carriage of Goods by Sea Act's One-Year Statute of Limitations. .................................13

CONCLUSION ...............................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alpha Int'l Trading Co. v. Maersk, Inc.*
141 F. Supp. 2d 580 (W.D.N.C. 2001) ...............................................................14

*Dowdell v. U.S. Dist. Ct.*
139 F. 444 (9th Cir. 1905) ...................................................................... 10-11

*G&J Fisheries, Inc. v. Costa (In re G&J Fisheries, Inc.)*
67 F.4th 20 (1st Cir. 2023)................................................................................7, 9

*Harriman v. Associated Indus. Ins. Co.*
91 F.4th 724 (4th Cir. 2024) ............................................................................14

*Hellyer v. Nippon Yesen Kaisya*
130 F. Supp. 209 (S.D.N.Y. 1955) ...................................................................14

*In re Am. Comm. Lines et al.*
746 F.2d 1351 (8th Cir. 1984) .........................................................................13

*In Re: Oil Spill by the Amoco Cadiz*
1982 AMC 1233 (7th Cir. 1982) ....................................................................9, 11

*In re Under Seal*
749 F.3d 276 (4th Cir. 2014) ...........................................................................14

*In the Matter of the Petition of Grace Ocean Private Limited, et al.*
Case No. 24-0941-JKB ......................................................................................1

*Lloyd's Leasing Ltd. v. Bates*
902 F.2d 368 (5th Cir. 1990) .............................................................................4

*Malgor & Co. v. Compania Trasatlantica Espanola, S.A.*
931 F. Supp. 122 (D.P.R. 1996) .......................................................................14

*Servicios-Expoarma, C.A. v. Indus. Marine Carriers*
135 F.3d 984 (5th Cir. 1998) ........................................................................7, 14

*Tex. Gulf Sulphur Co. v. Blue Stack Towing Co.*
313 F.2d 359 (5th Cir. 1986) ..................................................................... 4, 6, 8-10

*Thibeault v. Square D Co.*
960 F.2d 239 (1st Cir. 1992)..................................................................8

*Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp. Prides Litig.)*
235 F.3d 176 (3d Cir. 2000) ...............................................................9

**STATUTES**

46 U.S.C. §§ 30501, *et seq.*................................................................1

46 U.S.C. §§ 30701, *et seq.*............................................................ 13-15

Schoenbaum, 1 Admiralty & Mar. Law § 10:43 (6th ed.).......................15

**OTHER AUTHORITIES**

Supplemental Rule F(4) ...............................................1-2, 4-11, 13, 15

## COUNTER-STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     Did the District Court abuse its broad discretion under Supplemental Rule F(4) in denying US1's motion for leave to file a late claim nearly 14 months after the deadline, where Petitioners gave proper notice, US1 did not identify an adequate reason for its delay, and the late claim would prejudice Petitioners?

Suggested Answer: **No.**

## COUNTER-STATEMENT OF THE CASE

This case arises from the M/V Dali's ("Vessel") allision with the Francis Scott Key Bridge ("Bridge") on March 26, 2024 ("Casualty")—which received extensive local, national, and international media coverage. (JA211–223.)

On April 1, 2024, Grace Ocean Private Limited and Synergy Marine Pte Ltd ("Petitioners"), as owner and manager of the Vessel, respectively, filed a petition seeking exoneration from and/or limitation of liability pursuant to the Shipowners Limitation of Liability Act of 1851, 46 U.S.C. §§ 30501, *et seq.* ("Act"), in the admiralty case before the United States District Court for the District of Maryland ("District Court") captioned *In the Matter of the Petition of GRACE OCEAN PRIVATE LIMITED, et al.*, and designated Case Number 24-0941-JKB ("Limitation Action"). (JA211–223.) The same day the Limitation Action was filed, the District Court issued a Restraining Order (JA224–225) and Notice to Claimants (JA226–

227) requiring all potential claimants to bring claims against Petitioners on or before September 24, 2024—six (6) months after the Casualty.

Relatedly, the District Court ordered Petitioners to notify "all persons asserting claims" and publish the Notice to Claimants as required under Rule F(4) of the Supplemental Rules for Certain Admiralty and Maritime Claims (hereinafter, "Supplemental Rules"). (JA224–225.) Petitioners complied with the Supplemental Rules and District Court's orders by publishing the Notice to Claimants of the Limitation Action and September 24, 2024 claim-filing deadline in three different newspapers every week for four weeks. (JA273–292.) Nearly 50 claims were timely filed prior to this date, including claims by the State of Maryland and its agencies that owned/operated the Bridge, as well as personal injury and wrongful death claims related to the individuals working on the Bridge at the time of the Casualty. (JA147–160.)

The District Court extended the claim filing deadline for certain cargo interests to November 22, 2024, upon request made *before* the original deadline. (JA326–328.) One day before the September 24, 2024 deadline, a group of cargo interests—including other cargo interests insured by the Tokio Marine family of companies—filed a motion for extension of time to file their claims. (JA228–268.) After meeting and conferring, Petitioners and those cargo interests filed a joint stipulation, agreeing to a limited extension. (JA326–327.) Thereafter, the District

Court entered an Order consistent with the parties' joint stipulation in which the District Court ordered and decreed: "**In no event shall any late filed cargo claim be accepted after November 22, 2024.**" (JA326–328.) (Emphasis added.) US1 did not file a claim by the September 24, 2024 date ordered by the District Court, or even by the extended November 22, 2024 deadline for certain limited cargo interests.

On November 5, 2025—almost 14 months after the claim filing deadline, with fact discovery concluded, highly complex expert discovery underway, and trial of Phase I less than seven (7) months away—US1 filed a Motion for Leave to Late-File Answer and Claim ("Motion" or "Motion to Late-File Claim") as to alleged damage to its cargo on the Vessel. (JA422–446.) On December 12, 2025, the District Court issued a Memorandum and Order ("Order") denying US1's Motion. (JA485–492.) In the Order, the District Court concluded that: (a) US1 had proper notice of the claim-filing deadline; (b) US1 failed to provide an adequate reason for its delay; and (c) permitting US1 to file a late claim would prejudice the Petitioners' rights in the Limitation Action. (JA485–492.) US1 appeals the District Court's Order denying its Motion to Late-File Claim in the Limitation Action.

## STANDARD OF REVIEW

This Court reviews a district court's denial of permission to file late claims in an exoneration action for abuse of discretion. *See Lloyd's Leasing Ltd. v. Bates*, 902 F.2d 368, 371 (5th Cir. 1990); *see also Tex. Gulf Sulphur Co. v. Blue Stack Towing Co.*, 313 F.2d 359, 363 (5th Cir. 1986) (hereinafter, "*Texas Gulf*").

## SUMMARY OF ARGUMENT

This Court should affirm the District Court's Order on three key grounds.

*First*, the District Court applied the correct legal standard and did not abuse its discretion in evaluating US1's Motion seeking leave to file a late claim under the Act and Supplemental Rule F(4). (JA486–492.) Supplemental Rule F(4) provides courts with discretionary authority to enlarge the time within which claims may be filed "for cause shown"; but such relief is not a matter of right, and there is no requirement for a court grant such relief. (JA486.)

*Second*, the District Court did not abuse its discretion in denying the Motion to Late-File Claim because, upon properly considering and weighing the *Texas Gulf* factors based on the facts in the record before it, the District Court correctly concluded that: (a) US1 had notice of the September 24, 2024 claim-filing deadline in the Limitation Action because Petitioners published notice in accordance with the requirements of the Supplemental Rules; (b) "US1's explanation for the delay" in its Motion was "wanting"; (c) permitting US1 to file an extremely late claim would

4

prejudice Petitioners; and (d) in prior orders, the District Court notified potential claimants that, "[i]n no event shall any cargo claim be accepted after November 22, 2024," and it would have "little patience for late filings and will not be favorably inclined to granting future untimely requests for relief absent compelling circumstances." (JA371; JA294.)

*Third*, the District Court had an additional basis for properly denying the Motion to Late-File Claim. Specifically, US1's late claim is independently time-barred by the Carriage of Goods by Sea Act's one-year statute of limitations applicable to cargo claims because US1's cargo would have been delivered by June 2024, and US1 did not seek leave to file its claim until November 2025.

## ARGUMENT

### I. The District Court Applied the Correct Legal Standards in Evaluating US1's Motion Seeking Permission to File a Late Claim.

In its Order, the District Court explicitly set forth legal standards applicable to its review of the Motion, recognizing that Supplemental Rule F(4) "authorizes the Court to permit the late filing of a claim after the monitions period 'for cause shown'" (JA486), but that such relief is not a matter of right and depends upon an equitable showing. (JA488.) The District Court also properly set forth the factors identified by the United States Court of Appeals for the Fifth Circuit in *Texas Gulf* to assist district courts in evaluating whether late claims should be permitted. (JA488.) In its Order, the District Court evaluated US1's explanation for the delay

5

in filing its late claim. (JA488–489.) The District Court found US1's explanation for the delay" in the Motion "wanting," correctly concluding, among other things, that "US1 has not provided an adequate reason for its tardiness . . . ." (JA488.) Thereafter, the District Court considered and weighed the prejudice to Petitioners or other existing claimants if it permitted US1's extremely late claim. The District Court found that granting US1's motion "would burden Petitioners." (JA491.)

On appeal, US1 admits, as it must, that the District Court's Order identified and set forth the appropriate standard for reviewing its Motion under the Act and Supplemental Rule F(4). *See* Appellant's Br. at 9. US1 nevertheless contends that the District Court *applied* the wrong legal standard in evaluating its request to file a late claim by applying a "compelling circumstances" test, rather than the "for cause shown" standard referenced in Supplemental Rule F(4). *See* Appellant's Br. at 9–10. This argument is baseless and mischaracterizes both Supplemental Rule F(4) and the District Court's ruling.

Supplemental Rule F(4) provides, in relevant part, that "[f]or cause shown, the court ***may*** enlarge the time within which claims may be filed." Supplemental Rule F(4) (emphasis added). US1 contends this language ***requires*** a district court to enlarge the time within which claims may be filed to permit the late filing of a claim if the movant "shows cause" to do so. *See* Appellant's Br. at 12. US1 is wrong. To the contrary, "[r]elief from a tardy claim is not a matter of right." *Texas Gulf*, 313

F.2d at 363. The plain text of Supplemental Rule F(4) is clear that, while a district court has discretionary authority to enlarge a claim-filing deadline and/or permit a late claim, it is under no such obligation to do so even upon cause shown. "It depends upon an equitable showing," *see id.*, and Supplemental Rule F(4) grants district courts "wide discretion" in determining whether to permit the filing of late claims under the Rule. *G&J Fisheries, Inc. v. Costa (In re G&J Fisheries, Inc.)*, 67 F.4th 20, 27 (1st Cir. 2023). That is, even if US1 did show adequate cause—which it did not—district courts retain broad discretion to deny leave to file a late claim, which the District Court properly exercised in this case.

US1 also contends the District Court abused its discretion by applying the wrong legal standard based on its reference to a previous order in the Limitation Action, in which the District Court stated it would "not be favorably inclined to granting future untimely requests for relief absent compelling circumstances." (JA294.) This contention should be squarely rejected. The District Court's reference to its prior order did not articulate a different legal standard. Rather, it emphasized that US1 had ample notice that the monition period—which exists solely for the benefit of Petitioners—would be strictly enforced, particularly considering the complexity of the case. *See, e.g.*, *Servicios-Expoarma, C.A. v. Indus. Marine Carriers*, 135 F.3d 984, 989 (5th Cir. 1998) (holding the limitations period is

7

intended solely for the benefit of petitioners "to grant . . . relative security and stability by allowing it better to estimate its outstanding legal obligations").

Because the District Court applied the correct legal standards in evaluating US1's Motion under the Act and Supplemental Rule F(4), it did not abuse its broad discretion by denying the Motion and, accordingly, the Order should be affirmed.

## II. The District Court Did Not Abuse Its Discretion in Denying US1's Motion Seeking Leave to File an Extremely Tardy Claim.

US1 next argues that the District Court abused its discretion in denying US1's Motion to permit the filing of a late claim by "fail[ing] to properly apply" the *Texas Gulf* factors to the facts before it. *See* Appellant's Br. at 10-14.[1] Again, US1 is wrong.

In evaluating whether a late claim should be permitted, district courts have considered: (1) whether granting the motion will prejudice the rights of other parties; (2) whether the movant has provided a reason for the late filing; and (3) whether the limitation proceeding is pending and unresolved. *See Texas Gulf*, 313 F.2d at 362.[2] No one factor is dispositive. Not all factors need to be satisfied for a district court to

---

[1] US1's argument that the District Court "failed to properly apply" the factors, is merely a disagreement with the District Court's findings and conclusions based on the record, rather than its application of the factors themselves. To prevail on appeal, however, US1 must meet the "heavy burden" of showing an abuse of discretion. *Thibeault v. Square D Co.*, 960 F.2d 239, 242–43 (1st Cir. 1992). It has not done so.

[2] US1's arguments on appeal are limited to two factors. Appellant's Br. at 11-14.

exercise its broad discretionary authority to permit or refuse the filing of a late claim under the Act and Supplemental Rule F(4). *See, e.g.*, *In Re: Oil Spill by the Amoco Cadiz*, 1982 AMC 1233, 1236 (7th Cir. 1982) (affirming denial of motion for leave to file late claim based solely "on the ground that none of the claimants had shown good cause for the late filings . . . .").

In its Order, the District Court denied US1's Motion to Late-File Claim finding, among other things, that: (1) US1's reason for missing the deadline was inadequate; and (2) allowing US1's late claim would prejudice the parties by causing delay, increasing litigation expenses, and threatening the adequacy of the limitation fund. (JA488–492.) Thus, contrary to US1's assertion, the District Court considered and weighed the *Texas Gulf* factors based on the competent record facts before it and aptly exercised its broad discretion under Supplemental Rule F(4).

Reviewing for abuse of discretion[3], this Court must defer to the District Court's "sound judgment, so long as its decision falls within its wide discretion, and is not manifestly erroneous," *see In re G&J Fisheries, Inc.*, 67 F.4th at 27, and must "not interfere with the District Court's exercise of discretion unless there is a definite and firm conviction that the court . . . committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *See Welch & Forbes,*

---

[3] An appellate court reviews a district court's consideration of the factors only for abuse of discretion. *See Texas Gulf*, 313 F.2d. at 363.

*Inc. v. Cendant Corp. (In re Cendant Corp. Prides Litig.)*, 235 F.3d 176, 181 (3d Cir. 2000) (internal quotation and citation omitted); *see also Texas Gulf*, 313 F.2d. at 363 (noting the instances in which an appellate court "can declare that the action is so lacking in reason as to constitute an abuse of discretion will be, as they have been, rare indeed.").

***First***, the District Court did not abuse its discretion in finding that US1 did not provide an adequate reason for its delay. (JA488–489.) As evidenced by its Order, the District Court diligently assessed the record facts before it, reviewed applicable law, and correctly concluded that US1 did not identify an adequate reason for its delay. (JA489.) US1 argues this finding was an abuse of discretion because it did not have actual notice. *See* Appellant's Br. at 11. According to US1, its Motion provided "unrebutted evidence" demonstrating it "could not have" submitted a timely claim because it was unaware of the filing deadline and did not receive actual notice of the same. (*Id.; see also* JA422.) Unfortunately for US1, Supplemental Rule F(4) does not require actual notice.

It is settled law that a claimant's lack of actual notice is not a sufficient reason for delay in timely filing a claim under the Act and Supplemental Rules. *See Dowdell v. U.S. Dist. Ct.*, 139 F. 444, 446 (9th Cir. 1905). Rather, as the District Court correctly recognized, where "a monition and publication is made according to the rules and practice in admiralty proceedings, it becomes notice to 'all persons' having

any claims, whether they receive actual notice thereof or not." (JA489.) *See id.*; *see also In Re: Oil Spill by the Amoco Cadiz*, 1982 AMC 1233, 1239 (7th Cir. 1982) ("The effect of full compliance [with Rule F(4) publication requirements] is clear: compliance with the rule constitutes constructive notice.").

The District Court properly rejected US1's argument regarding actual notice because Petitioners gave proper notice to all prospective claimants of the Limitation Action and claim filing deadline. (JA488–489.) Supplemental Rule F(4) required Petitioners to issue notice of the Limitation Action and claim filing deadline to all prospective claimants and to publish by newspaper every week for four weeks as directed District Court's order. (JA224–227.) Petitioners did so. (JA489–491; JA273–292.) Petitioners issued and published the required notice in three different newspapers (Baltimore Sun, Daily Record, and Washington Post) every week for four weeks. (JA273–292.)

The District Court also rightly determined constructive notice was particularly sufficient here because US1 is a Maryland corporation with its principal place of business in Maryland, where notice was published. (JA489.) Moreover, the Vessel's allision with the Bridge was one of the most widely publicized maritime disasters in recent history, receiving extensive local, national, and international media coverage. (JA447.) US1 concedes it was aware of the allision itself, as it filed an insurance claim within days. (JA433.) Further, as the District Court recognized, "US1 was

aware of and considered its involvement in" the Limitation Action after its insurance claim was denied. (JA491.) US1's decision to wait nearly a year before filing its Motion is inexplicable. Thus, the District Court correctly determined that US1 had ample notice and failed to provide an adequate reason for its extreme delay.

*Second*, the District Court did not abuse its discretion in determining the Petitioners and other existing claimants would be prejudiced if it were to allow US1 to file its extremely late claim. (JA489–JA492.)

On appeal, US1 argues the District Court's finding of prejudice constitutes an abuse of discretion because it "did not identify any concrete harm" and "conflat[ed] potential prejudice . . . with . . . adverse effects 'on the rights of the parties.'" *See* Appellant's Br. at 12–14. US1's argument, however, ignores the District Court's thorough analysis as to how the filing of US1's late claim would, in fact, prejudice Petitioners. (JA489–JA492.) Specifically, the District Court recognized that, at the time US1 filed its Motion, the Limitation Action was at an advanced stage of litigation such that trial was "set to begin in less than six months . . . . Fact discovery is closed, and expert discovery is well underway." (JA489–JA491.) The District Court further recognized the extensive time, effort, and resources the parties have expended. (JA491.) Accordingly, the court found that permitting US1 to file its claim and participate in the action "would necessarily carry with it the risk of

potential prejudice, as **such participation comes with attendant rights, the exercise of which would burden Petitioners.**" (JA491.) (Emphasis added.)

Moreover, even if the Court only found "potential prejudice"—which it did not—US1 fails to articulate why such finding would be insufficient. Specifically, US1 does not cite any case law that prejudice to other parties must be "concrete." To the contrary, other circuits have recognized that potential prejudice may be sufficient to deny leave to file a late claim. *See, e.g.*, *In re Am. Comm. Lines et al.*, 746 F.2d 1351, 1353 (8th Cir. 1984) (affirming denial of motion for late claim despite pending proceedings where "there was at least potential prejudice" to another claimant). Accordingly, US1 fails to satisfy its heavy burden of proving that the District Court abused its discretion, and this Court should affirm the decision below.

### III. US1's Late Claim Is Independently Time Barred by the Carriage of Goods by Sea Act's One-Year Statute of Limitations.

Even if the District Court's analysis under Supplemental Rule F(4) and *Texas Gulf Sulfur* constituted an abuse of distraction—which it did not—the judgment should nonetheless be affirmed on the separate and independent ground that US1's proposed claim is barred by the one-year statute of limitations under the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701, *et seq.*[4]

---

[4] In the proceedings below, Petitioners raised and fully briefed their argument regarding COGSA's statute of limitations. (JA457–459.) US1 responded to the argument in its reply brief. (JA483.) The District Court declined to reach this argument, stating that its findings under Supplemental Rule F(4) and *Texas Gulf*

COGSA governs "[b]ills of lading for the carriage of 'goods by sea to or from ports of the United States, in foreign trade . . . .'" *Alpha Int'l Trading Co. v. Maersk, Inc.*, 141 F. Supp. 2d 580, 582 (W.D.N.C. 2001). COGSA's one-year statute of limitations provision states, "In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought **within one year after delivery of the goods or the date when the goods should have been delivered** . . . ." 46 U.S.C. § 30701 (Note § 3(6)) (emphasis added). The statute of limitations "is strictly enforced and permits no interruption." *Malgor & Co. v. Compania Trasatlantica Espanola, S.A.*, 931 F. Supp. 122, 125 (D.P.R. 1996).

Preliminarily, COGSA applies to this case because the Vessel was carrying goods in foreign trade. (JA212.) Further, due to the Casualty, US1's cargo never reached its intended destination. (JA458.) Nonetheless, non-delivery of cargo does not "abrogate the time limitation terms of" COGSA. *Hellyer v. Nippon Yesen Kaisya*, 130 F. Supp. 209, 211 (S.D.N.Y. 1955). Instead, COGSA's statute of limitations began to run on the date US1's cargo "should have been delivered" to the port of destination. *Servicios-Expoarma, C.A. v. Indus. Marine Carriers*, 135 F.3d

---

"suffice to resolve US1's Motion . . . ." (JA492.) Nonetheless, this Court may affirm on any ground supported by the record. *See, e.g.*, *In re Under Seal*, 749 F.3d 276, 288 (4th Cir. 2014) (holding that courts of appeals may consider "any theory plainly encompassed by the submissions in the underlying litigation"); *see also  Harriman v. Associated Indus. Ins. Co.*, 91 F.4th 724, 728 (4th Cir. 2024) (holding the appellee is "entitled to defend its victory on any basis supported by the record"). Accordingly, Petitioners' argument that US1's claim is time-barred is properly before this Court.

984, 988 (5th Cir. 1998); *see also* Schoenbaum, 1 Admiralty & Mar. Law § 10:43 (6th ed.) ("In the case of nondelivery, the reasonable time when delivery should have occurred is used.").

Synergy's managing director confirmed—under penalty of perjury in an affidavit submitted by Petitioners below—that notwithstanding the allision, US1's cargo would have been delivered by June 2024. (JA463.) Accordingly, US1's claim must have been filed by June 2025 to be timely. US1 did not attempt to file until November 5, 2025. Accordingly, the District Court's Order can be affirmed on the separate and independent basis that US1's claim is time-barred by COGSA.

## <u>CONCLUSION</u>

This Court should affirm the District Court's Order denying the Motion to Late-File an Answer and Claim. First, the District Court did not abuse its discretion by applying the incorrect legal standard to its review of US1's Motion. Second, the District Court did not abuse its discretion in ruling it would not permit the filing of US1's late claim within the Limitation Action, more than a year after the monition period. Supplemental Rule F(4) afforded the District Court broad discretionary authority to permit or prohibit the filing of US1's extremely late claim. The District Court correctly weighed all relevant factors based on the facts before it and did not make a clear error in judgment.

Dated: April 23, 2026

/s/ *Laurie G. Furshman*
Laurie G. Furshman
LGFurshman@duanemorris.com
Robert B. Hopkins
RBHopkins@duanemorris.com
Tristan A. Dietrick
TDietrick@duanemorris.com
Duane Morris LLP
1201 Wills Street, Suite 330
Baltimore, MD 21321
(410) 949-2900

BLANK ROME LLP

William R. Bennett, III
William.Bennett@blankrome.com
Blank Rome LLP
1271 Avenue of the Americas
New York, NY 10020
212-885-5000

16

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because this document contains 3,736 words, excluding the parts of the document exempted by Fed. R. App. R. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman font, 14-point size.

/s/ *Laurie G. Furshman*
Laurie G. Furshman
LGFurshman@duanemorris.com
Duane Morris LLP
1201 Wills Street, Suite 330
Baltimore, MD 21321
(410) 949-2943

<h1 style="text-align:center"><strong><u>CERTIFICATE OF SERVICE</u></strong></h1>

I HEREBY CERTIFY that on this 23rd day of April 2026, a copy of the foregoing Brief of Petitioners-Appellees was filed and served via the CM/ECF filing system in the United States Court of Appeals for the Fourth Circuit, which will provide notice of this filing to all counsel of record.

/s/ *Laurie G. Furshman*
Laurie G. Furshman
LGFurshman@duanemorris.com
Duane Morris LLP
1201 Wills Street, Suite 330
Baltimore, MD 21321
(410) 949-2943

United States Code Annotated
    Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
        Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Refs & Annos)

Supplemental Admiralty and Maritime Claims Rule F, 28 U.S.C.A.

# Rule F. Limitation of Liability

Currentness

**(1) Time for Filing Complaint; Security.** Not later than six months after receipt of a claim in writing, any vessel owner may file a complaint in the appropriate district court, as provided in subdivision (9) of this rule, for limitation of liability pursuant to statute. The owner (a) shall deposit with the court, for the benefit of claimants, a sum equal to the amount or value of the owner's interest in the vessel and pending freight, or approved security therefor, and in addition such sums, or approved security therefor, as the court may from time to time fix as necessary to carry out the provisions of the statutes as amended; or (b) at the owner's option shall transfer to a trustee to be appointed by the court, for the benefit of claimants, the owner's interest in the vessel and pending freight, together with such sums, or approved security therefor, as the court may from time to time fix as necessary to carry out the provisions of the statutes as amended. The plaintiff shall also give security for costs and, if the plaintiff elects to give security, for interest at the rate of 6 percent per annum from the date of the security.

**(2) Complaint.** The complaint shall set forth the facts on the basis of which the right to limit liability is asserted and all facts necessary to enable the court to determine the amount to which the owner's liability shall be limited. The complaint may demand exoneration from as well as limitation of liability. It shall state the voyage if any, on which the demands sought to be limited arose, with the date and place of its termination; the amount of all demands including all unsatisfied liens or claims of lien, in contract or in tort or otherwise, arising on that voyage, so far as known to the plaintiff, and what actions and proceedings, if any, are pending thereon; whether the vessel was damaged, lost, or abandoned, and, if so, when and where; the value of the vessel at the close of the voyage or, in case of wreck, the value of her wreckage, strippings, or proceeds, if any, and where and in whose possession they are; and the amount of any pending freight recovered or recoverable. If the plaintiff elects to transfer the plaintiff's interest in the vessel to a trustee, the complaint must further show any prior paramount liens thereon, and what voyages or trips, if any, she has made since the voyage or trip on which the claims sought to be limited arose, and any existing liens arising upon any such subsequent voyage or trip, with the amounts and causes thereof, and the names and addresses of the lienors, so far as known; and whether the vessel sustained any injury upon or by reason of such subsequent voyage or trip.

**(3) Claims Against Owner; Injunction.** Upon compliance by the owner with the requirements of subdivision (1) of this rule all claims and proceedings against the owner or the owner's property with respect to the matter in question shall cease. On application of the plaintiff the court shall enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action.

**(4) Notice to Claimants.** Upon the owner's compliance with subdivision (1) of this rule the court shall issue a notice to all persons asserting claims with respect to which the complaint seeks limitation, admonishing them to file their respective claims with the clerk of the court and to serve on the attorneys for the plaintiff a copy thereof on or before a date to be named in the notice. The date so fixed shall not be less than 30 days after issuance of the notice. For cause shown, the court may enlarge the time within which claims may be filed. The notice shall be published in such newspaper or newspapers as the court may direct once a week for four successive weeks prior to the date fixed for the filing of claims. The plaintiff not later than the day of second publication shall also mail a copy of the notice to every person known to have made any claim against the vessel or

the plaintiff arising out of the voyage or trip on which the claims sought to be limited arose. In cases involving death a copy of such notice shall be mailed to the decedent at the decedent's last known address, and also to any person who shall be known to have made any claim on account of such death.

**(5) Claims and Answer.** Claims shall be filed and served on or before the date specified in the notice provided for in subdivision (4) of this rule. Each claim shall specify the facts upon which the claimant relies in support of the claim, the items thereof, and the dates on which the same accrued. If a claimant desires to contest either the right to exoneration from or the right to limitation of liability the claimant shall file and serve an answer to the complaint unless the claim has included an answer.

**(6) Information to be Given Claimants.** Within 30 days after the date specified in the notice for filing claims, or within such time as the court thereafter may allow, the plaintiff shall mail to the attorney for each claimant (or if the claimant has no attorney to the claimant) a list setting forth (a) the name of each claimant, (b) the name and address of the claimant's attorney (if the claimant is known to have one), (c) the nature of the claim, i.e., whether property loss, property damage, death, personal injury etc., and (d) the amount thereof.

**(7) Insufficiency of Fund or Security.** Any claimant may by motion demand that the funds deposited in court or the security given by the plaintiff be increased on the ground that they are less than the value of the plaintiff's interest in the vessel and pending freight. Thereupon the court shall cause due appraisement to be made of the value of the plaintiff's interest in the vessel and pending freight; and if the court finds that the deposit or security is either insufficient or excessive it shall order its increase or reduction. In like manner any claimant may demand that the deposit or security be increased on the ground that it is insufficient to carry out the provisions of the statutes relating to claims in respect of loss of life or bodily injury; and, after notice and hearing, the court may similarly order that the deposit or security be increased or reduced.

**(8) Objections to Claims: Distribution of Fund.** Any interested party may question or controvert any claim without filing an objection thereto. Upon determination of liability the fund deposited or secured, or the proceeds of the vessel and pending freight, shall be divided pro rata, subject to all relevant provisions of law, among the several claimants in proportion to the amounts of their respective claims, duly proved, saving, however, to all parties any priority to which they may be legally entitled.

**(9) Venue; Transfer.** The complaint shall be filed in any district in which the vessel has been attached or arrested to answer for any claim with respect to which the plaintiff seeks to limit liability; or, if the vessel has not been attached or arrested, then in any district in which the owner has been sued with respect to any such claim. When the vessel has not been attached or arrested to answer the matters aforesaid, and suit has not been commenced against the owner, the proceedings may be had in the district in which the vessel may be, but if the vessel is not within any district and no suit has been commenced in any district, then the complaint may be filed in any district. For the convenience of parties and witnesses, in the interest of justice, the court may transfer the action to any district; if venue is wrongly laid the court shall dismiss or, if it be in the interest of justice, transfer the action to any district in which it could have been brought. If the vessel shall have been sold, the proceeds shall represent the vessel for the purposes of these rules.

**CREDIT(S)**
(Added Feb. 28, 1966, eff. July 1, 1966; amended Mar. 2, 1987, eff. Aug. 1, 1987.)

**<Amendments received through October 1, 2025>**

Supplemental Admiralty and Maritime Claims Rule F, 28 U.S.C.A., FRCP SUPP AMC Rule F

Including Amendments Received Through 4-1-2026

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

UNITED STATES COURT OF APPEALS, SEVENTH CIRCUIT

January 13, 1982

Nos. 79-2269; 80-1251

*Copyright © 1982 American Maritime Cases, Inc.*

**Reporter**
1982 AMC 1233 *

# IN RE: OIL SPILL BY THE AMOCO CADIZ OFF THE COAST OF FRANCE ON MARCH 16, 1978.  IN THE MATTER OF AMOCO TRANSPORT COMPANY, ET AL.; LOUANNEC, ET AL., Claimants-Appellants v. AMOCO TRANSPORT COMPANY, Plaintiff-Appellee.

## Core Terms

notice, late claim, claimant, district court, commune, transport, actual knowledge, late claimant, late filing

## Headnotes

PRACTICE - 3131. Time to Perfect Appeal.

Although notice of appeal was premature because filed before entry of final judgment, that notice became perfected when final judgment was entered three weeks later; hence the filing of a second notice of appeal was superfluous.

COURTS 1111. Discretion - LIMITATION OF SHIPOWNER'S LIABILITY - 15. Pleading and Practice - 18. Delay and Prejudice of Other Interests - PRACTICE - 115. FRCP - Supplemental Rule F(4) - 161. Claim.

Shipowner's compliance with Supplemental Rule F(4), requiring publication of limitation complaint and mailing of notices to all known claimants, constitutes constructive notice to all the world.  *Held:* Trial judge did not abuse his discretion in refusing to allow the filing of late claims by foreign parties who failed to justify their delay.

## Counsel

Peter Kalat and S. Robert Schrager (Curtis, Mallet-Provost, Colt & Mosle), Warren C. Ingersoll and Dennis M. Robb (Lord, Bissell & Brook) and Douglas A. Jacobsen (Bigham, Englar, Jones & Houston) for Claimants-Appellants Louannec, et al.

Frank Cicero, Roger L. Taylor and Robert J. Kopecky (Kirkland & Ellis) for Appellees Amoco Transport Company and Amoco International Oil Company.

**Panel:** Sprecher, Ct.J., Fairchild, Senior Ct.J., and Bauer, Ct.J.

## Opinion

 **[*1233]** PER CURIAM [*]:

On March 16, 1978, the motor tanker *Amoco Cadiz* went aground off the coast of Brittany, France, and discharged its cargo of approximately 220,000 tons of crude oil into the sea.  On September 15, 1978,  **[*1234]** Amoco Transport Company, the registered owner of the *Amoco Cadiz,* filed a complaint in the district court under 46 U.S. Code, sec. 185 for exoneration from or limitation of liability arising out of the grounding of the *Amoco Cadiz.* [1] Pursuant to Supplemental Rule F of the Federal Rules of Civil Procedure, and upon posting of security by Amoco Transport, the district court on September 19, 1978, enjoined further proceedings on any claim subject to the limitation proceeding, and ordered publication of notice that all claims against Amoco Transport were to be filed by November 6, 1978.

Over 150 parties filed claims in the limitation proceeding prior to the November 6, 1978, deadline.  In addition, the court permitted several extensions of the deadline and allowed late claimants to file *nunc pro tunc* until April 2, 1979.  This appeal arises out of the denial by the district court of permission to file late claims presented to the court in June, 1979.  We find no abuse of discretion in the denial of these claims and therefore affirm the decision of the district court.

I.

Claimants Louannec, S.A., Armor Nautisme, Ponant Loisirs, S.A., Treguier Plaisance, Tregor Marine Prigent, Triagoz Marine, Albert LeFlem, S.A. Les Bleiz, and Loc' Amor moved for permission to file late claims on June 5, 1979.  Louannec is a commune of the department of Cotes due Nord; the remainder of the claimants are private citizens or businesses engaged in marine construction, rental, sale and/or repair.  The motion was consolidated with another motion for leave to file a late claim filed on June 15, 1979, on behalf of Alain LeBitoux, the owner of an island off the Brittany coast. [2] The same attorneys represent all of these claimants.  The district court requested supporting affidavits and memoranda to establish cause for the late filing and to justify the exercise of the court's discretion to allow claims presented seven months after the published filing deadline.

 **[*1235]** The late claimants submitted affidavits July 17, 1979, which indicated that the primary reason for delay was lack of actual knowledge of the limitation proceeding in the United States until April, 1979, when there was publicity in France about the taking of depositions from communes which already were

---

[*] This opinion bore the notation "Unpublished order, not to be cited per Circuit Rule 35." -- Eds.

[1] On June 4, 1979, the limitation action was consolidated with proceedings concerning the *Amoco Cadiz* pending in other districts and transferred to the ***Northern District of Illinois by the Judicial Panel on Multidistrict Litigation, 1979 AMC 1811***.

[2] A third motion on behalf of Louis LeRoy, a restaurant owner from the French Commune of Lannion, was also included in this consolidated presentation of late claims.  LeRoy was represented by different counsel than the other claimants.  LeRoy filed a notice of appeal October 26, 1979 No. 79-2330, but that appeal was dismissed under Fed.R.App.P. 42 on February 13, 1980.

claimants in the action. The supporting memoranda pointed out that notice of the limitation proceeding was published in the *Chicago Daily Law Bulletin* and the international edition of the *Wall Street Journal.* Such notice, it was argued, was unlikely to reach all interested French parties and thus justified tardy filing due to lack of actual notice. Furthermore, it was noted that the proceedings were still at the pleadings stage, and the addition of these claimants would not inconvenience or prejudice the existing parties. Claimant LeBitoux, in addition to asserting lack of actual knowledge of the proceeding until April, 1979, stated that he had been under the misapprehension that his interests would be represented by his commune. Finally, claimant Louannec did not assert lack of knowledge, but rather claimed that clerical error was the only basis for the commune's delay. French counsel for the commune stated in an affidavit that Louannec was inadvertently left off the list of communes in the Cotes du Nord which was transmitted to American counsel for the filing of claims in the limitation proceeding.

In its memorandum in opposition to allowing the filing of the late claims, Amoco Transport advanced several arguments. First, Amoco Transport noted that its Affidavit of Publication, filed November 22, 1978, stated that the publication of notice was in accordance with the court's order, which designated the *Chicago Daily Law Bulletin* and *Wall Street Journal* as the means of publication. Next, it asserted that the *Amoco Cadiz* oil spill and resulting litigation had been extensively publicized in France, particularly in Brittany. Amoco Transport also noted that none of the claimants explained why, after learning of the proceedings in April, 1979, they had waited another two months to file claims which were unsupported by affidavits. It pointed out that LeBitoux's affidavit failed to include any factual basis or reason for his bare assertion that he believed his commune would represent his interests. Finally, Amoco Transport noted that the clerical error claimed by Louannec was eleven months old [3] and was the basis for a late claim motion filed April 5, 1979, on behalf of the commune of Ploulec'h.

**[\*1236]** The district court denied the motion on the ground that none of the claimants had shown good cause for the late filings as required by Supplemental Rule F(4). [4] The court found the "naked statement" by the claimants that they lacked actual knowledge of the proceedings was insufficient to constitute "cause," especially in light of the publicity surrounding the oil spill and the number of claims timely filed by similarly situated parties. The court further found that claimant LeBitoux had failed to show that he had made any reasonable effort to protect his interests by investigating whether his island property was represented by the commune. Finally, the court found that the clerical error regarding Louannec was insufficient as "cause" for late filing. Thus, the court concluded that none of the proffered reasons supported an exercise of its discretion to permit these late claims.

---

[3] The original list of communes in the Cotes du Nord for whom claims should be filed in the United States was transmitted to American counsel in September, 1978.

[4] Fed.R.Civ.P. Supplemental Rule F(4) provides:

"(4) Notice to Claimants. Upon the owner's compliance with subdivision (1) of this rule the court shall issue a notice to all persons asserting claims with respect to which the complaint seeks limitation, admonishing them to file their respective claims with the clerk of the court and to serve on the attorneys for the plaintiff a copy thereof on or before a date to be named in the notice. The date so fixed shall not be less than 30 days after issuance of the notice. For cause shown, the court may enlarge the time within which claims may be filed. The notice shall be published in such newspaper or newspapers as the court may direct once a week for four successive weeks prior to the date fixed for the filing of claims. The plaintiff not later than the day of second publication shall also mail a copy of the notice to every person known to have made any claim against the vessel or the plaintiff arising out of the voyage or trip on which the claims sought to be limited arose. In cases involving death a copy of such notice shall be mailed to the decedent at his last known address, and also to any person who shall be known to have made any claim on account of such death."

II.

Before we can assess the merits of the district court's decision, we must first determine whether jurisdiction exists over this appeal. The late claimants filed two appeals from the order of September 12, 1979, denying them leave to file their claims. The first notice of appeal was filed October 11, 1979, and was assigned No. 79-2269. The claimants then moved under Rule 54(b) of the Federal Rules of Civil Procedure for a finding that there was no just reason for delay in entering final judgment, and for entry of judgment. On October 24, 1979, the district court entered an order making the requisite finding, and directing judgment **[*1237]** to be entered against the late claimants. The judgment was entered by the clerk of the Northern District of Illinois on November 2, 1979. On February 8, 1980, the clerk complied with an order of this court to enter a notation of the October 24 order on the docket sheet of the case. The claimants then filed a second notice of appeal February 26, 1980, designated No. 80-1251, and that appeal was consolidated, upon motion, with No. 79-2269.

Claimants presented convoluted arguments in their brief concerning appellate jurisdiction. The arguments focused on the technical requirements for entry of judgment and perfecting an appeal. We need not address those arguments in detail because jurisdiction clearly exists under *28 U.S. Code, sec. 1291* (1980) and was perfected by the initial notice of appeal filed October 11, 1979. Although the October 11 notice was premature because no final judgment had been entered by the district court at that time, the notice was effective to perfect the appeal after final judgment was entered in conformity with Fed.R.Civ.P. 58 and 79(a) pursuant to the Rule 54(b) order of October 24, 1979. Fed.R.App.P. 4(a)2. The second notice of appeal was superfluous.

III.

Our review of the district court's decision is limited to whether the court abused its discretion in denying the late claims. See *Texas Gulf Sulphur Co. v. Blue Stack Towing Co., 1963 AMC 349, 354, 313 F.2d 359, 363* (5 Cir. 1963). Our role is not to analyze the facts *de novo* and determine how we think the motion should have been decided. Rather, we look to see whether the court's judgment manifests "sound discretion, that is to say, a discretion exercised not arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." *Langnes v. Green, 282 U.S. 531, 541, 1931 AMC 511, 518 (1931)*.

Admiralty law has long recognized that the trial court has broad discretion to grant or deny leave to file late claims in a limitation proceeding. 3 *Benedict on Admiralty,* sec. 83 (7th ed. 1981); see also Wright & Miller, *Federal Practice & Procedure,* sec. 3256 (1973). This discretion is embodied in Supplemental Rule F(4), which permits late claims "for cause shown." Fed.R.Civ.P. Supplemental Rule F(4). The rule serves the policy interests underlying the limitation proceeding by insuring that all claims will be considered in a *forum concursus, Maryland Casualty Co. v. Cushing, 347 U.S. 409, 413-17, 1954 AMC 837, 840-48 (1954)*, while preventing prejudice to timely claims by requiring that late claims be justified by a showing of cause. Based on equitable considerations, courts have allowed late claims, e.g., *In re Industrial Transportation Corp., 1972 AMC 2380, 2395, 344 F.Supp. 1311, 1322 (EDNY 1972); Petition of Flinchum, 1969 AMC 142, 143, 303 F.Supp. 971, 972 (D Md. 1969); Petition of Tugboat Dalzella, Inc., 1966 AMC 28, 29-30, 254 F.Supp. 298, 299 (SDNY 1965)*, or denied late claims, e.g., *Texas Gulf Sulphur Co. v. Blue Stack Towing Co., 1963 AMC 349, 353, 313 F.2d 359, 363* (5 Cir. 1963); *Petition of Esso Shipping Co., 1954 AMC 757, 763, 121 F.Supp. 837, 842 (SD Tex. 1954); The James Sheridan,*

*1947 AMC 1176, 1177-78, 73 F.Supp. 739, 741 (ED Pa. 1947)*, depending upon the particular circumstances of the case.

We have no difficulty in finding that the trial court properly exercised its discretion in this case by denying the late claims for failure to satisfy the "cause" requirement of Supplemental Rule F(4). The primary justification advanced by the late claimants was lack of actual knowledge of the limitation proceedings. It was uncontradicted, however, that Amoco Transport fully complied with all notice requirements of the federal rules.

Supplemental Rule F(4) requires that the trial court issue notice of the limitation proceeding "to all persons asserting claims with respect to which the complaint seeks limitation," and that the court direct publication of the notice in appropriate newspapers. Publication in foreign newspapers is not required by the rule. The court ordered notice to all parties and publication in the *Chicago Daily Law Bulletin* and the international edition of the *Wall Street Journal.* Amoco Transport submitted affidavits accompanied by exhibits demonstrating compliance with the publication order.

The rule also obligates the limitation plaintiff to mail copies of the notice to any person "known to have made any claim." This includes parties who have filed legal actions and parties who have indicated they intend to make a claim but have not yet commenced any litigation. 3 *Benedict on Admiralty,* sec. 80 (7th ed. 1981). Amoco Transport filed an affidavit stating that all known claimants had been given notice of the proceeding. None of the late claimants in this appeal assert that they were "known" claimants entitled to receive personal notice of the limitation proceeding. [5]

 **[*1239]** Amoco Transport has, therefore, satisfied all notice requirements of Supplemental Rule F(4). The effect of full compliance is clear: compliance with the rule constitutes constructive notice.

"Where a monition and publication is made according to the rules and practice in admiralty proceedings, it becomes notice to 'all persons' having any claims. whether they receive actual notice thereof or not, and, if they fail to appear within the time designated, they are liable to lose the opportunity of presenting their claims in that proceeding or in any other." *Dowdell v. United States District Court for Northern District of California, 139 Fed. 444, 446* (9 Cir. 1905).

While the court may, upon consideration of particular circumstances and in light of equitable considerations, consider lack of notice a sufficient cause to permit late filing, it is by no means bound to do so.

The court in this case did not abuse its discretion by finding that lack of actual knowledge of the limitation proceeding did not constitute sufficient "cause" for late filing. The court's decision is fully supported by the legal effect of the notice given in this case. Furthermore, the facts presented no unique circumstances

---

[5] This distinguishes this case from cases where courts have recognized lack of actual notice as a basis for permitting the filing of late claims. All of these cases involved seamen who were aboard vessels involved in collisions, and who therefore were foreseeable claimants. In *Sagastume v. Lampsis Navigation Ltd., 1978 AMC 2130, 579 F.2d 222* (2 Cir. 1978), the court reversed a decision of the district court denying late claims by Honduran seamen injured when their ship sank off Cape Hatteras. The seamen all signed releases shortly after the accident. When the seamen moved to file late claims, they stated that they had no actual notice of the proceedings. The district court found the lack of notice irrelevant and decided the motion on the validity of the releases. On appeal, the court was primarily concerned with the ruling on the releases, but also noted that the lack of notice was sufficient cause to permit the late claims. *1978 AMC at 2132, 579 F.2d at 224*. The court cited two other cases where lack of notice was deemed sufficient cause for filing late claims. See also *Jappinen v. Canada Steamship Lines, Ltd., 1970 AMC 2404, 417 F.2d 189* (6 Cir. 1969); *Petition of United States, 1949 AMC 223, 172 F.2d 355* (2 Cir. 1949).

which would encourage the court to exercise its discretion to permit the late claims. To the contrary, the claim of no actual knowledge strains credulity because, as the district court noted, the *Amoco Cadiz* oil spill and lawsuits arising out of the spill have been the subject of extensive publicity in France generally, and particularly in Brittany. Moreover, the claimants provided no **[*1240]** explanation of why they waited two months to file their claims after they finally did become aware of the limitation proceeding.

The other justifications presented to the court as bases for "cause" to file late claims are similarly uncompelling and provide no basis for finding an abuse of discretion in the district court's decision. The clerical error claimed by the commune Louannec was that the name of the commune was dropped from a list of claimants filed in the district court. A similar error in regard to the commune Ploulec'h, which is represented by the same French counsel as Louannec, was the basis for a late claim filed in April, 1979. No reason was given in the affidavit of counsel for Louannec as to why the error regarding Louannec was not also discovered in April. No statement was made to indicate the due diligence of the commune in protecting its claim, nor was any assertion made that the commune was misled into assuming its claim was already filed. The district court had ample reason to find this meager factual showing did not constitute "cause" for a late filing.

Similarly, the justification offered by claimant LeBitoux constituted no more than his bare assertion that he believed his interests were represented by his commune. No facts were presented in his affidavit to indicate the basis for this misunderstanding, nor did he demonstrate any effort to protect his legal rights. Again, the district court did not abuse its discretion in finding this proffered justification insufficient to permit the filing of a late claim.

In sum, the district court acted entirely within the broad discretion granted in Supplemental Rule F(4) in denying all of the late claims at issue on this appeal. We therefore affirm the decision of the district court.

Copyright © 1982 American Maritime Cases, Inc.